IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WC HOMES, LLC :

v. : Civil Action No. DKC 2009-1239

UNITED STATES OF AMERICA, et al. :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action to quiet title are (1) a motion to dismiss the first amended complaint filed by the United States of America, construed as a motion for summary judgment (Paper 18); (2) Plaintiff’s motion for summary judgment (Paper 21) and (3) an earlier motion to dismiss filed by the United States (Paper 10). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the United States’ motion to dismiss will be construed as a motion for summary judgment and will be denied and its original motion to dismiss or in the alternative for summary judgment will be dismissed as moot. Plaintiff’s motion for summary judgment will be granted as to the United States, although the entry of judgment will be deferred until the claim against Olympia Funding Inc. is clarified and resolved.

## I. Background

This case concerns a property in Potomac, Maryland that was foreclosed upon and subsequently offered for sale. Plaintiff WC Homes, LLC filed a complaint against the United States and Olympia Funding, Inc. ("Olympia Funding") on May 12, 2009.

The Clerk entered default against Olympia Funding, Inc. ("Olympia Funding") on June 23, 2009 for want of answer or other defense (Paper 8), but the court declined to enter any judgment at that time.

There is no dispute regarding the facts of the case. The property is located at 14000 River Road and was acquired by Michael Beavers ("Beavers") on June 29, 1998. His deed was recorded on July 9, 1998.

On September 19, 2002, a federal tax assessment was made against Beavers, but was not recorded at that time. On September 28, 2006, Beavers executed a promissory note to Washington Mutual Bank, FA, ("Washington Mutual"), secured by a deed of trust for the Potomac property ("Washington Mutual deed"). The deed was not recorded at that time.

On October 17 and October 24, 2006, notices of the federal lien, each in the amount of $200,108.03, were filed against Beavers in the office of the Montgomery County Clerk.

On February 7, 2007, Washington Mutual recorded its deed in the office of the Montgomery County Clerk. In June of that year, Beavers defaulted on his loan. On July 25, 2007, Washington Mutual initiated a foreclosure action against Beavers in the Circuit Court for Montgomery County, and the United States was not named as a defendant in the suit.

A foreclosure sale was held on September 11, 2007, and Washington Mutual purchased the property. On December 19, 2007, the deed was conveyed to Washington Mutual and it was recorded on January 24, 2008. On March 18, 2008, Washington Mutual conveyed the deed to Plaintiff. The deed was recorded on May 13, 2008.

In its first amended complaint, Plaintiff brings three causes of action: (I) Plaintiff seeks to quiet title as against the United States by asking the court to find that the tax liens are junior to the Washington Mutual deed and were extinguished by the foreclosure sale; (II) Plaintiff asks the court to quiet title pursuant to the doctrine of equitable subrogation; and (III) Plaintiff asks the court to quiet tile regarding the Olympia Funding deed of trust recorded on January 23, 2007. (Paper 13).

The United States moved to dismiss the original complaint on July 9, 2009. (Paper 10). Plaintiff then filed a first

amended complaint (Paper 13) and a response to the motion to dismiss. (Paper 15). Defendant United States filed a new motion to dismiss the first amended complaint, which also served as a reply concerning the original motion to dismiss and was in response to Plaintiff's response in opposition. (Paper 18). Plaintiff filed a motion for summary judgment on September 1, 2009. (Paper 21). Defendant filed an opposition to the motion for summary judgment and a reply concerning its motion to dismiss the first amended complaint on September 18, 2009. (Paper 22). The final responsive paper, by Plaintiff, was filed September 29, 2009. (Paper 23).[1]

Plaintiff's motion for summary judgment ostensibly asks for judgment as against both Defendants, providing a sample order that would enter judgment for Plaintiff and find that both the tax liens and Olympia Funding's deed were junior to Plaintiff's deed. It relies for support on Paper 20 (which also serves as Plaintiff's response to the United States' motion to dismiss) and offers limited support for the motion for summary judgment as against Olympia Funding. The memorandum neglects to cite support for whether, if Olympia Funding's deed is junior, it was extinguished during the foreclosure sale. As explained below,

[1] Plaintiff later notified the court of a recent case from the Court of Special Appeals of Maryland. (Paper 24).

therefore, Plaintiff will have fourteen days in which to offer clarification on whether it seeks summary judgment against both Olympia Funding and the United States, and if so, the precise relief it seeks. Alternatively, Plaintiff may explain why judgment by default may be appropriate against Olympia Funding.

## II. Pending Motions

### A. Standard

The original "motion to dismiss or, in the alternative, for summary judgment," would normally be moot, as Plaintiff filed a first amended complaint after the filing of the motion to dismiss that would supplant the complaint that was the object of the original motion to dismiss. Plaintiff also filed a response to the original motion to dismiss. The United States filed a motion to dismiss the first amended complaint which served both as a new motion and a reply to its original motion to dismiss. Plaintiff later filed a motion for summary judgment and a memorandum which supported that motion as well as supporting a response to the motion to dismiss the first amended complaint.

This memorandum responds to the issues in all the pending motions under the summary judgment standard, because evidence that was not in the original pleadings but was submitted by the parties has been considered.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). No dispute exists concerning the material facts in this case. The only remaining issues are questions of law. [2]

**B. Tax Liens**

The analysis in this case involves interplay between federal and Maryland law. The first step in the inquiry is to determine which claim takes priority – that of the United States or that of Plaintiff (the Washington Mutual deed). Then the court must decide whether the federal tax lien was extinguished

[2] There is no contention in this case that either the tax liens or the deed of trust were filed improperly. The focus of this case is on determining priority of the interests.

in the foreclosure sale held on September 11, 2007. The second inquiry will be determined by the outcome of the first.

To support its contention that the federal tax lien is junior to the Washington Mutual deed, Plaintiff argues that the Washington Mutual deed is a security interest. It also contends that the effective date of the Washington Mutual deed was the date it was "delivered, that is, the date it was executed and acknowledged by Mr. Beavers on September 28, 2006." It argues that, once that deed was recorded on February 6, 2007, it related back to September 28, 2006, and then vested Washington Mutual with priority over the United States, which it characterizes as a "creditor without notice." (Paper 15, at 4-5).

The United States argues that Plaintiff acquired the property subject to the federal tax lien. The United States maintains that according to Maryland law, the deed is junior in priority to the federal tax lien because the tax lien was filed in the proper office first. This priority status is relevant for the foreclosure proceedings as well, the United States argues, because even in a nonjudicial sale, the sale will not divest the tax lien when the sale is made pursuant to a junior claim.

As will be seen, Plaintiff has the better argument, albeit not for precisely the reasons it advances.

**1. Priority of the Claims**

Federal tax liens are created pursuant to 26 U.S.C. § 6321 *et seq*. To determine an interest in property, "courts look to state law and where a federal tax lien has attached to a state-created property interest, courts look to federal law to determine the priority of competing liens on the property or rights to property." *Mortgage Elec. Registration Sys. v. Church*, 2009 WL 3398810 *2 (W.D. Mich. 2009), reconsideration denied by *Mortgage Elec. Registration Sys. v. Church*, 2009 WL 3823037 (W.D. Mich., Nov. 12, 2009), citing *Aquilino v. United States,* 363 U.S. 509, 512-51 (1960). "Federal tax liens do not automatically have priority over all other liens." *United States v. McDermott*, 507 U.S. 447, 449 (1993). A "federal tax lien is choate and perfected at the date of assessment and is valid against a purchaser once proper notice has been filed." *United States v. Scheve*, 1998 WL 919873 *5 (D.Md. 1998)(citing *United States v. Vermont*, 377 U.S. 351, 354 (1964) and 26 U.S.C. § 6323(a)). "The relative priority of a federal tax lien is governed by federal law." *United States v. McCombs*, 30 F.3d 310 (2nd Cir. 1994), citing *United States* v. *Equitable Life Assurance Soc'y*, 384 U.S. 323, 328, 330 (1966). However, "both federal

and state courts must look to state law" when determining whether a taxpayer has property, or property rights, to which a federal tax lien could attach. *Aquilino,* 363 U.S. at 512-513.

The tax liens in the instant case were assessed on September 19, 2002. Notices of the liens were not filed until October 17 and 24, 2006. Between the federal tax assessment date and the dates on which the federal tax liens were filed, Beavers executed a promissory note to Washington Mutual secured by a deed. This deed was not recorded until February 2007, after the tax liens were filed.

Plaintiff argues that the tax liens do not take priority because the Washington Mutual deed is a "security interest" according to federal law. The section discussing tax liens, 26 U.S.C. § 6323, provides that:

> The lien imposed by [§] 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

26 U.S.C. § 6323(a). The Fourth Circuit has also held that:

> . . . if an asserted claim is a "security interest" within the meaning of the Tax Code, it takes priority if it is created before the government properly files its tax liens . . .

*United States v. 3809 Crain Limited Partnership*, 884 F.2d 138, 142 (4th Cir. 1989)(citing *Air Power, Inc. v. United States*, 741

F.2d 53 (4th Cir. 1984)). It is therefore necessary to determine whether Washington Mutual was the holder of a "security interest" prior to the recording of the tax liens. In other words, when did Washington Mutual's interest become a "security interest"?

A "security interest" is defined in 26 U.S.C. § 6323(h)(1) as any interest in property acquired by contract for the purpose of securing payment of an obligation.[3]

> A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1); *see United States v. 3809 Crain Ltd. Partnership*, 884 F.2d at 142.

Determining whether Washington Mutual held a security interest requires a two-part inquiry, of which one part is clear. Washington Mutual did pay "money or money's worth" for the property and so has satisfied part (B) above. The analysis

---

[3] In its original motion to dismiss, the United States argues, inexplicably, that "[w]hile the Federal lien statute refers to local law when it comes to purchasers . . . it does not do so for holders of a secured interest." (Paper 11, at 5). As evidenced by the excerpt above, the statute clearly refers to local law in order to assess whether an interest in property is a security interest.

under part (A) requires examining relevant local law. The parties disagree over which provision of the Maryland Code applies: § 3-201 or § 3-203 of the Real Property Article.

Section 3-201 of the Real Property Article, Maryland Annotated Code, provides:

> The effective date of a deed[4] is the date of delivery, and the date of delivery is presumed to be the date of the last acknowledgment, if any, or the date stated on the deed, whichever is later. Every deed, when recorded, takes effect from its effective date as against the grantor, his personal representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice.

Md. Code Ann., Real Prop. § 3-201 (2005). Section 3-203 provides:

> Every recorded deed or other instrument takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date, unless the grantee of the subsequent deed has:

---

[4] According to § 1-101 (c) of the Real Property Article, a "'deed' includes any deed, grant, mortgage, deed of trust, lease, assignment, and release, pertaining to land or property or any interest therein or appurtenant thereto . . ." A "deed of trust" "means only a deed of trust which secures a debt or the performance of an obligation, and does not include a voluntary trant unrelated to security purposes." § 1-101(d). *See also, Chicago Title Ins. Co. v. Mary B*, No 2219, Sept. Term 2008, filed January 4, 2010 (citing *Bank of Commerce v. Lanahan*, 45 Md.App. 396, 407-08 (1876))("A deed of trust is a security instrument against real property, similar to a mortgage.")

(1) Accepted delivery of the deed or other instrument;

(i) In good faith;

(ii) Without constructive notice under § 3-202; and

(iii) For a good and valuable consideration; and

(2) Recorded the deed first.

Md. Code Ann., Real Prop. § 3-203 (2005). The United States argues that § 3-203 applies and gives its tax lien priority under local law because the United States recorded its "deed" [or instrument] first. This interpretation is incorrect because it focuses on the wrong transaction.[5]

As noted above, the only question is when the Washington Mutual interest became protected under Maryland law. The federal statute directs reference to local law to determine the status of the security interest as against a "subsequent judgment lien arising out of an unsecured obligation."

Maryland law, as recently explained in *Chicago Title Ins. Co. v. Mary B.*, --- A.2d ---, 2010 WL 6746 *4 (Md.App. Jan. 4,

[5] In any event, the recorded tax liens were not "deeds" which only apply to bona fide purchasers. *Grayson v. Buffington*, 233 Md. 340, 343 (1964); *Tyler v. Abergh*, 65 Md. 18, 20 (1885). Nor is it an "other instrument affecting property." Rather, when recorded, the assessments were liens on the judgment debtor's interest in the land.

2010), provides the following mechanism for creation of a judgment lien:

> Md.Code (2006 Repl.Vol.) section 11-401 et seq. of the Courts and Judicial Proceedings Article ("CJP"), and Rules 2-601 et seq. concern judgments and, in particular, judgment liens. CJP section 11-401(c)(1) defines a "Money judgment" as "a judgment determining that a specified amount of money is immediately payable to the judgment creditor." CJP section 11-402(b) and Rule 2-621(a) each provide that a money judgment that is recorded and indexed in a particular county's circuit court is a lien against real property of the judgment debtor located in that county.

Pursuant to CJP 11-402(c) and Rule 2-621(b), once recorded, a judgment becomes a lien on the judgment debtor's interest in land from the date of recording. Accordingly, under Maryland law, a judgment must be recorded before it has any impact on the debtor's interest in land. Thus, as of the date of delivery of the Washington Mutual deed of trust, a money judgment which had not been recorded would not have been effective against the Washington Mutual deed of trust.

Under Md. Code Ann., Real Prop. § 3-201, the Washington Mutual deed of trust, once recorded, took effect as of its date of delivery, as against "every creditor of the grantor with or without notice." Again, as stated in *Chicago Title*:

> A deed that has been recorded, as the DOT was on October 9, 2007, is effective from its effective date-here, July 15, 2005-as

> against "every creditor of the grantor (here Petr) with or without notice." RP § 3-201 (emphasis added). This language plainly means that a recorded deed of trust is effective against any creditor of the person who granted the deed of trust as of the date the deed of trust was delivered (not the date it was recorded) regardless of whether the creditor did or did not have notice of the deed of trust at any time.

*Chicago Title Ins. Co.*, 2010 WL 6746, *5. Thus, because the Washington Mutual deed of trust would have priority over any subsequent judgment lien, it was a "security interest" under federal law as of the date of delivery, which was prior to the recording of the tax liens.

Because the deed has met both requirements, Washington Mutual was the holder of a security interest before the tax liens were recorded. 26 U.S.C. § 6323 explains that a tax lien is not valid against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof." The federal tax liens are not valid against Washington Mutual because they were not filed until after the delivery of the Washington Mutual deed. The Washington Mutual deed therefore has priority over the federal tax liens.

**2. Effects of the Foreclosure**

The next issue to be resolved is whether the federal tax liens were extinguished upon the completion of the foreclosure sale. Plaintiff argues that the sale was a nonjudicial sale and

thus the terms of 26 U.S.C. § 7425(b) apply. The United States offers no evidence to the contrary. A nonjudicial sale "includes, but is not limited to, the divestment of the taxpayer's interest in property which occurs by operation of law, by public or private sale, by forfeiture, or by termination under provisions contained in a contract for a deed or a conditional sales contract." 26 C.F.R. § 301.7425-2(a)(3).

A federal tax lien on property may be "discharged by the Internal Revenue Service ("IRS") under certain conditions" pursuant to 26 U.S.C. § 7425. This court has found that

> If the subject property is sold in a nonjudicial foreclosure sale, the purchaser must give notice of the sale via registered or certified mail. . . to the IRS no later than twenty-five days prior to the sale. 26 U.S.C. § 7425(c)(1). If the IRS receives sufficient notice, the IRS may redeem the property within 120 days of the date of the sale. *Id*. § 7425(d)(1). If the IRS does not receive notice . . . the federal tax lien remains intact.

*United States v. Scheve*, 1998 WL 919673 *3 (D.Md. 1998). Plaintiff maintains that Washington Mutual's trustees complied with the notice provisions contained in that statute, and has provided evidence through an exhibit attached to its response to the motion to dismiss. (Paper 15). (*See* Paper 20, Attach. 1, Affidavit of Kenneth MacFadyen and Exhibits therein, including a letter dated August 9, 2007 to the IRS with notice of

nonjudicial sale of property concerning federal tax lien 321702106.). The letter sent to the IRS requests permission to proceed with sale of the property and was received by the IRS on August 10, 2007. This letter meets the requirements of notice pursuant to 26 U.S.C. § 7425(b) as it was received by the IRS at least twenty-five days before the foreclosure sale on September 11, 2007. The IRS did not redeem its liens on the property within 120 days of the sale.

The United States argues that if the sale was a nonjudicial sale according to the terms of Washington Mutual's Deed, United States law still applies to preclude the possibility that the liens would be extinguished because the federal liens are superior to Washington Mutual's deed.

The priority of the liens is again the dispositive factor in this analysis. "A nonjudicial sale pursuant to a lien which is junior to a tax lien does not divest the tax lien, even though notice of the nonjudicial sale is given to the appropriate district director." 26 C.F.R. § 301.7425-2(a)(3). In this case, as explained above, the tax liens were junior to Washington Mutual's deed. Therefore, the foreclosure sale

extinguished the liens when the IRS failed to redeem them within 120 days of the foreclosure sale.[6]

**3. Equitable Subrogation**

As explained above, according to Maryland and federal laws, the Washington Mutual deed is free and clear from the federal tax liens. There is therefore no reason to address Plaintiff's arguments concerning equitable subrogation at this time.

**III. The Olympia Funding Deed of Trust**

In count III of the amended complaint (count II of the original complaint), Plaintiff alleges that Olympia Funding is the secured party under a deed of trust dated November 2, 2006, and recorded on January 23, 2007, in the principal amount of $500,000. (Paper 13 ¶ 27). Plaintiff asserts that the Olympia Funding deed was dated subsequent to the date of the Washington Mutual deed, but recorded prior to the Washington Mutual deed. Moreover, Plaintiff demonstrates that the Olympia Funding deed contains a statement that "This Securing Instrument is Subordinate to an Existing First Lien(s) of Record." (Paper 13 ¶

---

[6] The form judgment submitted by Plaintiff seeks a declaration that its deed is superior to the tax liens, but does not seek an explicit declaration that the tax liens were extinguished. If Plaintiff seeks such an explicit declaration, it should, along with the supplemental motion concerning Olympia Funding, explain precisely the relief requested. The United States will have an opportunity to respond before judgment will be entered.

29; Paper 15, Attach. 1, at 10, "Olympia Funding Deed of Trust"). To date, Olympia Funding has not contested Plaintiff's allegations that the Olympia Funding deed was rendered junior and subordinate to the Washington Mutual deed.

As noted above, Md. Code Ann., Real Prop. § 3-203 applies between two deeds held by bona fide purchasers, and acts to give priority to the deed which was recorded first. In this case, although there are two deeds, Olympia Funding is not a bona fide purchaser because it had knowledge of an existing prior equity, as evidenced by the statement on its deed that it was subordinate to an "existing first lien." *See Lewis v. Rippons*, 282 Md. 155 (1978). *See also In re Konowitz*, 905 F.2d 55, 58 (4th Cir. 1990)("*Bona fide* purchasers take in good faith, they do not take subject to known equities.").

The fact that the Washington Mutual deed was unrecorded at the time that Olympia Funding's deed was created is of no import. Maryland courts have found that where a

> grantee accepts conveyance of property with actual knowledge that there has been a prior sale of part of that property, he is not a bona fide purchaser, notwithstanding that the prior deed was not recorded; even constructive notice of prior unrecorded equities will preclude the grantee from being a bona fide purchaser.

*Lewis*, 282 Md. at 161. Because Olympia Funding was not a bona fide purchaser, the fact that its deed was recorded prior to the

Washington Mutual deed does not give it priority and § 3-203 does not apply. According to § 3-201, which applies in this case, the Washington Mutual deed has priority because it takes effect from its date of delivery, which is earlier than the effective date of the Olympia Funding deed. Therefore, the Olympia Funding deed was junior in priority to the Washington Mutual deed.

Although the facts alleged in the Amended Complaint are sufficient to show that the Olympia Funding deed was junior in priority, there has been no showing that the nonjudicial foreclosure sale extinguished the Olympia Funding deed. Plaintiff will have fourteen days to clarify its position concerning the Olympia Funding deed, the relief requested, and, if appropriate, to file a properly supported motion demonstrating that it is entitled to judgment by default.

## IV. Conclusion

For the foregoing reasons, the motion of the United States to dismiss the first amended complaint, read as a motion for summary judgment, will be denied, and the motion of the United States to dismiss the original complaint will be denied as moot. A separate Order will be issued.

Judgment on Plaintiff's motion for summary judgment will be reserved until Plaintiff has filed a properly supported motion as to Olympia Funding.

/s/

DEBORAH K. CHASANOW
United States District Judge